UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

DEBRA S. MUSIC,              :    CIVIL NO. 1:05-CV-1223
                             :
          Plaintiff          :    (Judge Conner)
                             :
     v.                      :    (Magistrate Judge Smyser)
                             :
THE PRUDENTIAL INSURANCE     :
COMPANY OF AMERICA and       :
PENN NATIONAL INSURANCE,     :
                             :
          Defendants         :

### REPORT AND RECOMMENDATION

The complaint in this case was filed on June 17, 2005.
The plaintiff is Debra S. Music, a Palmyra resident.  The
defendants are the Prudential Insurance Company of America and
Penn National Insurance.  The cause of action is stated under
the Employee Retirement Income Security Act, 29 U.S.C.
§ 1132(a)(1)(B).  The court has jurisdiction under 28 U.S.C.
§ 1331.

The complaint states that defendant Prudential
Insurance Company of America is engaged in the business of
selling long-term disability insurance in Pennsylvania and that
defendant Penn National Insurance is the plan administrator of
the employee welfare benefit plan and is the employer of the

plaintiff.  The complaint states that Prudential sold to Penn National the long-term disability insurance contract under which the plaintiff as a Penn National employee is entitled to long-term disability benefits if she is unable to perform the material and substantial duties of her regular occupation due to sickness or injury and has a 20% or greater loss of indexed monthly earnings due to sickness or injury.

The complaint relates that the plaintiff stopped working as a customer service representative on June 19, 2002 and began to receive benefits under the Penn National salary continuation program.  It relates that Prudential determined that she was eligible for a closed period of long term disability benefits from December 20, 2002 through August 31, 2003, and paid her $627.45 a month, terminating payments as of September 1, 2003.  Prudential denied the claim of the plaintiff for long term disability benefits beyond that.

The complaint states that the plaintiff has chronic active rheumatoid arthritis and that the plaintiff's treating physician states that the plaintiff is not able to work.  The complaint asserts that the plaintiff is disabled from performing the material and substantial duties of her regular

2

occupation of customer service representative due to sickness
or injury, that she has performed all of the conditions of the
policy that are required of an insured under the policy, that
Prudential has refused to make payments of long term disability
benefits, and that Prudential has no valid basis to deny her
claim.  It is asserted that the plaintiff must as a result make
payments for life insurance coverage in the amount of $2,208.00
per year.  It is asserted that she has had to pay $9,120.00 for
health and dental insurance coverage under COBRA.

By way of relief, the complaint seeks an order
directing defendants Prudential and Penn National to pay long-
term disability payments of $627.45 a month to her effective
September 1, 2003, to reimburse her life insurance payments and
health and dental insurance payments, and ordering the
reinstatement of life insurance and health and dental
insurance.  She also seeks interest, costs and attorneys' fees.

Defendant Prudential filed an answer to the complaint
on August 18, 2005 (Doc. 4).

Defendant Penn National's motion to dismiss the
complaint (Doc. 5) asserting that it as the plaintiff's

3

employer but not her health insurer did not breach any duty
owed to her, was denied by Order of April 19, 2006 (Doc. 39) on
the basis that defendant Penn National's role as plan
administrator cannot be determined absent a development of the
factual record.

Motions for summary judgment have been filed by the
plaintiff (Doc. 28), defendant Prudential (Doc. 21) and
defendant Penn National (Doc. 25).  Supporting briefs (Docs.
31, 22 and 26) were filed; LR 56.1 statements (Docs. 29 and 23,
with defendant Penn National adopting defendant Prudential's
statement); summary judgment evidentiary materials (Docs. 30
and 27), briefs in opposition (Docs. 36, 37, 33 and 34), and
opposing LR 56.1 statements (Docs. 35, 32 and 38) were also
filed.  Reply briefs have not been filed.

The undisputed facts as stated by defendants Prudential
and Penn National, with record references, are:

> 1. Plaintiff Debra Music was employed as a customer
> service representative at Penn National Insurance at
> the time she stopped working on June 20, 2002 due to
> a diagnosis of rheumatoid arthritis. (*See*, PRU 236-
> 242 of the Administrative Record ("Record").
>
> 2. On August 7, 2002, Ms. Music filed a claim for
> long term disability benefits under Group Contract
> 40558-PA ("Policy") issued to Penn National

Holding Corporation and its Affiliated Companies
indicating a diagnosis of rheumatoid arthritis.
(*See*, PRU 241-242, PRU 1-40 of the Record.)

3. This long term disability policy is an employer-
sponsored program and, as such is subject to the
terms and conditions of the Employee Retirement
Income Security Act of 1974 ("ERISA").

4. The Policy provides Prudential with discretionary
authority to interpret the terms and conditions of
the plan, including when "disability" exists.
Specifically, the Policy sets forth:

> This Group Contract underwritten by The
> Prudential Insurance Company of America provides
> insured Benefits under your Employer's ERISA
> plan(s).  The Prudential Insurance Company of
> America as Claims Administrator has the sole
> discretion to interpret the terms of the Group
> Contract, to make factual findings, and to
> determine eligibility for benefits. The decision
> of the Claims Administrator shall not be
> overturned unless arbitrary and capricious.

(*See*, PRU 34 of the Record).

5. The Policy defines "Disability" as:

> You are disabled when Prudential determines
> that:
> * you are unable to perform the material
>   and substantial duties of your regular
>   occupation due to your sickness or injury;
>   and
> * you have a 20% or more loss in your
>   indexed monthly earnings due to that
>   sickness or injury.

(*See*, PRU 11 of the Record)

6. On November 8, 2002, Prudential denied plaintiff's
claim for long term disability benefits stating that
her doctor's treatment notes indicate continued
improvement of her symptoms with treatment and that
her symptoms had resolved prior to the end of her
elimination period.  (*See*, PRU 41-43 of the Record)

5

7. Plaintiff appealed Prudential's initial decision on December 23, 2002. (*See*, PRU 47-48 of the Record)

8. On January 27, 2003, Prudential upheld its decision to deny plaintiff's claim for long term disability benefits determining that there is no medical evidence to support an inability by plaintiff to perform sedentary work. (*See*, PRU 50-53 of the Record)

9. Plaintiff submitted a second appeal on March 7, 2003. (*See*, PRU 59 of the Record)

10. In support of plaintiff's second appeal, she submitted further documentation from her treating physician on or about July 10, 2003. (*See*, PRU 61-62, 66-67 of the Record)

11. On August 11, 2003, Prudential approved a closed period of LTD benefits from December 20, 2002 through August 31, 2003. Prudential thereafter terminated plaintiff's claim effective September 1, 2003 finding that a review of the medical documentation in the file indicated that while plaintiff was diagnosed with sero-negative Rheumatoid Arthritis which may have impaired her ability to work for a closed period of time, her condition improved with medication and she was able to perform the duties of her regular occupation as of the date of July 9, 2003. (*See*, PRU 69-72 of the Record)

12. On February 5, 2004, plaintiff submitted a third appeal. (*See*, PRU 81-82 of the Record)

13. On February 26, 2004, Prudential submitted all of plaintiff's medical documentation in the file, in addition to those received on appeal, to Dr. D. Dennis Payne, board certified in internal medicine and rheumatology, for a file review. (*See*, PRU 86-87, 89-90 of the Record)

14. On March 10, 2004, Dr. Payne rendered his independent medical record review. (*See*, Independent Medical Record Review, PRU 89-90 of the Record)

6

> 15. On March 17, 2004, Prudential upheld its decision
> to award a closed period of benefits for the period
> December 20, 2002 through August 31, 2003 and to
> terminate LTD benefits effective September 1, 2003 as
> the independent medical record review, in addition to
> Prudential's own review of plaintiff's medical
> records, revealed that plaintiff was capable of
> performing full time sedentary work. (*See*, PRU 92-94
> of the Record)

(Doc. 23).

The undisputed facts as stated by the plaintiff are not materially different from the defendants' statement in ¶¶ 1-11, but are materially different from the defendants' statement in ¶¶ 12-16 of the plaintiff's statement.  The plaintiff's ¶¶ 12-16 are:

> 12. Plaintiff and her counsel submitted to Prudential
> the records and reports of George W. Kunkel, M.D., a
> rheumatologist, who has treated the Plaintiff for
> several years. (PRU 81-82)
>
> 13. In his report of February 2, 2004, Dr. Kunkel
> states: "Because of the recent increase in the level
> of her rheumatoid disease, she is unable to work in
> any ongoing capacity to include part-time and four-
> hour work days." (PRU 193)
>
> 14. Despite the clear and unequivocal opinion of
> Dr. Kunkel, on March 17, 2004, Prudential once again
> denied Plaintiff's request for payment of benefits.
> (PRU 92-94)
>
> 15. The letter of March 17, 2004, completely
> misapprehends and misinterprets the opinion of Dr.
> Kunkel, who clearly stated: "Because of the recent
> increase in the level of her rheumatoid disease, she

7

is unable to work in any ongoing capacity to include part-time and four-hour work days." (PRU 193)

16. Although it was clearly the opinion of Dr. Kunkel that Plaintiff was unable to perform even sedentary work (PRU 193), Prudential in its denial, insisted that she was capable of performing full-time sedentary work. (PRU 92-94)

(Doc. 29). The defendants do not agree with some of these characterizations of the evidence by plaintiff. (*See,* Docs. 35, 38). The plaintiff's statement also adds at ¶¶ 18 and 19:

18. As a result of the denial of LTD benefits by Prudential, Plaintiff has been required to make payments for life insurance coverage at the rate of $2,208.00 per year and will continue to do so as long as her claim for LTD benefits is denied. Her life insurance coverage was decreased from $206,000.00 to $100,000.00. (Affidavit of Debra S. Music, ¶7, Complaint ¶19)

19. As a result of the denial of her claim for LTD benefits by Prudential, the Plaintiff has incurred charges for health and dental coverage under COBRA in the total amount of $9,120.00. After January 1, 2005, Plaintiff has obtained coverage under her husband's policy; however, that policy provides no dental coverage. (Affidavit of Debra S. Music, ¶6, Complaint ¶20)

(Doc. 29). These facts are supported by Ms. Music's affidavit (Doc. 30) and are not in dispute. The defendants deny responsibility for these losses of benefits. *(See,* Docs. 35, 38).

8

Dr. Payne's Independent Medical Review (PRU 000089-90)

stated in five paragraphs the following:

Introduction:  The purpose of this chart review is to summarize and document the objective evidences of the medical condition of Debra Music.  Objective medical documentation will be evaluated for medical condition, evolution and severity of symptoms, functional impact of signs and symptoms, response to management and residual functional capacity with direct relationship to recovery or decline in work abilities.

Clinical Features:  Ms. Debra Music is a 47 year old female with a diagnosis of seronegative rheumatoid arthritis (RA) with an onset around 1998.  Symptoms were documented as inflammatory in the usual joints with symmetry consistent with RA.  No laboratory or radiographic evidence specific for RA were ever documented.  Her radiographs of the hands were reported to reveal some osteopenia.  This is nonspecific for RA.  No erosions or joint space narrowing were noted.  No examination findings of characteristic deformities or rheumatoid disease are contained in the medical record.  No rheumatoid nodules are noted.  Features of degenerative joint disease have been documented in the left knee with features of this also being noted in the spine (cervical and lumbar).  There is not mention of extra-articular features of RA mentioned other than possible ocular sicca symptomatolgy.  No follow-up mention occurs.

Treatment and Clinical Course:  Treatment has been appropriate for RA to include NSAIDs, low dose corticosteroids, Plaquenil, Arava, methotrezate, and Remicade.  Her response to these treatments is documented to be good in an overall pattern with recurring "flares" of synovitis.  Functional decline is not clearly documented in an objective manner other than

9

mentions of pain and stiffness.  No structural
or laboratory or radiographic evidences exist
over the course of medical therapy to document
functional decline.

Summary of Medical Data:  Ms. Music's diagnosis
of RA is based purely on the physical findings.
Although this is possible, it is extremely
unlikely for RA of a disabling severity to
remain without radiographic evidences of the
disease, laboratory evidences of the disease, or
physical findings of joint deformities or
functional disabilities.

Further, Ms. Music medical records do not
support changes in her medical condition of RA
over the course of treatment that would lead her
to losing her abilities to work.  Her documented
medical condition is unchanged to slightly
improved over the course of her treatment with
Dr. Kunkel.  In summary, based on the medical
records, it appears that Ms. Music can perform,
at least, the duties of a sedentary full time
occupation.

(Doc. 27)

Summary judgment is appropriate if the "pleadings,
depositions, answers to interrogatories, and admissions on
file, together with the affidavits, if any, show that there is
no genuine issue as to any material fact and that the moving
party is entitled to judgment as a matter of law."
Fed.R.Civ.P. 56(c).  The moving party bears the initial
responsibility of informing the court of the basis for its
motion and identifying those portions of the record which
demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  The moving

party may discharge that burden by "'showing'-- that is,

pointing out to the district court -- that there is an absence

of evidence to support the nonmoving party's case." *(Id.* at

325).  Once the moving party has met its burden, the nonmoving

party may not rest upon the mere allegations or denials of its

pleading; rather, the nonmoving party must "set forth specific

facts showing that there is a genuine issue for trial."

Fed.R.Civ.P. 56(e).

An issue of fact is "'genuine' only if a reasonable jury,

considering the evidence presented, could find for the non-

moving party." *Childers v. Joseph*, 842 F.2d 689, 693-94 (3d

Cir. 1988) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 249 (1986)).  A material factual dispute is a dispute as

to a factual issue that will affect the outcome of the trial

under governing law.  *Anderson*, *supra*, 477 U.S. at 248.  In

determining whether an issue of material fact exists, the court

must consider all evidence in the light most favorable to the

non-moving party.  *White v. Westinghouse Electric Co.*, 862 F.2d

56, 59 (3d Cir. 1988).

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex, supra*, 477 U.S. at 322.  "Under such circumstances, 'there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" *Anderson v. CONRAIL*, 297 F.3d 242, 247 (3d Cir. 2002)(quoting *Celotex, supra*, 477 U.S. at 323).

The defendants have argued in the briefs supporting their motions for summary judgment that the plaintiff failed to prove that she was "totally disabled" from her regular occupation, that the opinions of treating and examining physicians should not be afforded special deference over those of conflicting non-treating physicians, that the plaintiff has not proven that defendant Penn National is a fiduciary under ERISA and that the plaintiff has failed to establish that Penn National breached any duty owed to the plaintiff.  The plaintiff argues in support of her motion for summary judgment that her claim for

long-term benefits was arbitrarily and capriciously denied and that she is entitled to reimbursement of payments for life insurance payments and reinstatement of her life insurance coverage as well as her disability benefits.  She also argues that she is entitled to reimbursement for health and dental insurance coverage payments she made.

The first issue that we will address is whether Prudential arbitrarily and capriciously denied the plaintiff's claim. *Orvosh v. Program of Group Ins. for Salaried Employees of Volkswagon of Am., Inc.*, 222 F.3d 123, 129 (3d Cir. 2000). There is a corollary issue whether the standard of review, or level of scrutiny, is heightened because Prudential, the defendant insurer, funds and administers the policy.  *Pinto v. Reliance Standard Life Ins. Co.*, 214 F.3d 377, 378 (3d Cir. 2000).  A heightened standard of scrutiny is appropriate here; however, in any event, the decision was arbitrary and capricious under an ordinary degree of scrutiny.

The defendants' argument that the plaintiff failed to prove disability mistakenly construes Dr. Payne's report to state that the plaintiff does not have rheumatoid arthritis.  A mistaken construction of Dr. Payne's report is not surprising.

The exact nature of the findings and of the opinions stated therein is very unclear.  Since that is so, the fact that the decision of Prudential to deny the plaintiff's claim for disability benefits was based entirely upon the opinions stated by Dr. Payne renders that decision one without a firm basis.

Dr. Payne's report clearly reveals the absence of a basis to support the opinion that "Ms. Music can perform, at least, the duties of a sedentary full time occupation."  An objective analysis of the "Summary of Medical Data" set forth by Dr. Payne reveals that Dr. Payne has discussed diagnostic protocols, disease symptomology and vocational issues in a manner that does not identify basic definitions of terms and basic assumptions and does not therefore permit a reasonable reliance upon the medical-vocational opinion ultimately expressed.  The medical-vocational opinion expressed is that "based on the medical records, it appears that Ms. Music can perform, at least, the duties of a sedentary full time occupation."

The "medical records" that Dr. Payne had considered, and the only records that he had considered, were Dr. Kunkel's records.  Dr. Kunkel had continuously examined and treated the

14

plaintiff.  Dr. Kunkel had the opportunity to observe her and
to personally hear her descriptions of her symptoms and to view
her person.  Dr. Kunkel's medical-vocational opinion that the
plaintiff can not perform her regular occupation was based upon
a consideration of the plaintiff as a patient, as a putative
worker and as a relator of symptoms.  Dr. Payne's opinion that
the plaintiff can perform the duties of a sedentary full time
occupation, on the other hand, was a statement of a
generalization about rheumatoid arthritis sufferers whose
disease diagnosis is "based solely on physical findings."  If
such generalizations have merit, the reason(s) why they may
have merit are not evident from what Dr. Payne has stated.

The November 8, 2002 Prudential decision to deny the
plaintiff's application for disability benefits stated that the
claim was being denied because medical documentation was found
not to support an inability to work as a customer service
representative (Doc. 27, PRU 000042).  A second denial letter
on January 27, 2003 stated that the claim was denied because
"no current sickness or injury...would prevent sedentary work"
(*Id.* at 000052).  On August 11, 2003, Prudential accepted a
diagnosis of rheumatoid arthritis and that a temporary
disability had resulted from the plaintiff's disease.  A

15

disability was found to have lasted from June 20, 2002 until July 9, 2003 (*Id.* at 000071).  The final March 17, 2004 decision was based upon Dr. Payne's report and the reason stated was that Dr. Payne's report is consistent with Prudential's assessment (*Id.* at 000094).

The decision was arbitrary in part because it wrongly assumed that the issue was whether the plaintiff has the objective symptoms of rheumatoid arthritis rather than whether she has a sickness resulting in disabling symptoms.  The decision was arbitrary in part also because it unreasonably afforded weight to Dr. Payne's statements that the plaintiff can perform the duties of a sedentary full time occupation when the basis stated for the opinion by Dr. Payne is clearly not an adequate basis for such an opinion to be afforded evidentiary weight.

Sickness is defined in the policy to include "any disorder of your body or mind" (Doc. 27, PRU 000011).  "Material and substantial duties" are the duties "normally required for the performance of your occupation." *Id.*

16

Since sickness includes any disorder of the body, it would be an erroneous application of the policy language and definitions to limit claims to those based upon disorders involving only objectively verified symptoms.  Moreover, since the policy sets forth a 24-month limit on a "self reported symptoms" (*Id.* at 000031) sickness (*Id.* at 000019), the policy plainly includes coverage for disabling bodily disorders that are not objectively verified.

Defendant Prudential places some probative emphasis upon an August 5, 2003 statement by Dr. Kunkel that Ms. Music could type for up to four hours with appropriate breaks (*Id.* at 000156).  Since her customer service representative job was a 40-hour a week job, and in consideration of the definition of "material and substantial duties", this statement does not bear much if any probative weight.

Prudential's brief asserts that its "sole discretion" under the policy "to interpret the terms of the Group Contract, to make factual findings, and to determine eligibility for benefits" and not to "be overturned unless arbitrary and capricious" (Doc. 27, PRU 000034) is dispositive here. However, Prudential's argument that its "discretionary

authority to determine a participant's eligibility for benefits" determines the outcome of this case places undue emphasis upon the allocation to Prudential of discretion and too little emphasis upon the necessity that there be evidence and reasons to support its decision.

The first argument presented by Prudential, that Ms. Music failed to prove that she is "totally disabled" from her regular occupation, contains references to the medical reports that are a part of the record. The plaintiff's August 7, 2002 application to Prudential for disability benefits stated that her condition interferes with her ability to perform her job because "[i]t is very hard to sit, stand or walk for any period of time due to pain and stiffness" (Doc. 27, PRU 000242). The primary thrust of Prudential's argument that it correctly decided the plaintiff's claim is that there is not adequate objective evidence of rheumatoid arthritis. The brief for Prudential mentions her pain and stiffness, but acknowledges no possibility of a determination of a disabling "sickness or injury" without objective medical evidence of a medically determinable sickness or injury. In essence, Prudential in its brief converts the issue from whether the plaintiff has a sickness or injury that prevents her from performing the

material and substantial duties of her regular occupation into
whether she has rheumatoid arthritis.  But Prudential cites no
policy provision that the "sickness or injury" must be
objectively determinable or objectively determined.  The
conversion of the issue from one that would have been the
correct framing of the issue and that would more likely have
been resolved in favor of the plaintiff into one that was not a
correct framing of the issue and that would not be resolved in
favor of the plaintiff was arbitrary.  It was simply not
consistent with the policy language.[1]

The plaintiff has willingly entered the fray on the issue
of whether her condition is rheumatoid arthritis, no doubt so
because her treating rheumatologist has consistently diagnosed
her with chronic active rheumatoid arthritis.  (*See,* Doc. 27,
PRU 000193).

Defendants argue that the plaintiff's symptoms are
"questionably related" to rheumatoid arthritis, and suggest in
the Prudential brief that the diagnosis of rheumatoid arthritis
is incorrect (Doc. 22, pp. 18-21) Dr. Payne does not state that

---

[1] Indeed, the policy specifically addresses "self-reported
symptoms" disabilities.

the plaintiff does not have rheumatoid arthritis.  Prudential's reading of Dr. Payne's opinion is a misreading of what Dr. Payne had said.  Dr. Payne has said that Dr. Kunkel's treatments have been appropriate for rheumatoid arthritis.  Dr. Payne has stated that severe and disabling rheumatoid arthritis is usually characterized by and documented by radiographic evidence, laboratory evidence and observable physical changes, and he has noted the absence of objective evidence.  In so noting,  Dr. Payne does not state that Ms. Music does not have rheumatoid arthritis.  He implies rather that she does have physical findings consistent with rheumatoid arthritis but does not have radiographically documented symptoms, laboratory documented symptoms or the full range of expected physical findings.  His phrase "extremely unlikely for RA of a disabling severity to remain" is too ambiguous to yield a reliable inference, and certainly does not yield a reliable inference that she does not have rheumatoid arthritis when in the next sentence he said that her "medical records do not support changes in her medical condition of RA over the course of treatment..."

When Dr. Payne goes on in his letter, on the basis of
"medical records from George W. Kunkel, M.D."[2] to state the
medical-vocational opinion that "based on her medical records,
it appears that Ms. Music can perform, at least, the duties of
a sedentary full time position" (Doc. 27, PRU 000090), a
reasoning mind must recognize that a decision based upon Dr.
Payne's opinion cannot be reasonably justified and is arbitrary
and capricious.  If the objective medical evidence does not
support a finding of a disabling sickness, then it was apparent
to Dr. Payne that Dr. Kunkel had based his opinion upon
subjective symptoms and perceptions of functional limitations
reported by the patient.  Dr. Payne does not, however,
acknowledge in any way the possibility of a disabling set of
symptoms not supported by the objective medical evidence.  The
defendants implicitly adopt this point of view, i.e., that
there is no issue beyond whether there is objectively
established disabling rheumatoid arthritis.

The decision by Prudential to find no disability on the
basis of Dr. Payne's report was arbitrary and capricious.  In
that the decision to deny benefits was arbitrary and

---

[2]  Since Dr. Payne's opinion is dated March 10, 2004, one assumes
that he had Dr. Kunkel's letter of February 2, 2004 (Doc. 27, PRU 000193).

capricious, it will be recommended that the defendants' motions
for summary judgment be denied and that the plaintiff's motion
for summary judgment be granted in part.

The plaintiff's motion for summary judgment seeks an order
to defendant Prudential to recommence the payment of benefits.
We note that the policy contains a 24-month limitation upon
benefits for a disability that is based upon self-reported
symptoms. (*See,* Doc. 27, PRU 000019).  The plaintiff had
received benefits for a period of time of less than 24 months.
Prudential has not addressed the 24-month limitation in its
decision on the plaintiff's case.  The relief in this case
should not require an indefinite payment of benefits, and the
self-reported symptoms benefits limitation issued should be
reserved for consideration if appropriate by Prudential.
Stated in other words, if after 24 months of benefits there are
none other than self-reported symptoms, a termination of
benefits may be appropriate.

As set forth above, the defendants deny ERISA
responsibility for the plaintiff's losses of life, health and
dental insurance benefits.  The plaintiff filed no reply brief
in support of her motion for summary judgment, and did not

provide legal authority to support her entitlement to recovery
of these other categories of benefits from either defendant in
her brief in support of her summary judgment motion (Doc. 31).

The defendants argue that the plaintiff's complaint and
her claim are limited to a recovery of wrongfully denied
benefits "under the plan" and that the only plan at issue in
this case is the plan for long term disability benefits.  They
cite *Godfrey v. Bellsouth Telecommunications, Inc.,* 89 F.3d 755
(11th Cir. 1996), where the Court held that compensatory and
punitive damages are not recoverable under 29 U.S.C. § 1332 or
§ 1140.  The issue here, however, is not whether reimbursement
for life insurance premiums and for health and dental insurance
premiums is required as a matter of compensatory or punitive
damages but is, rather, whether such reimbursement is required
by application of 29 U.S.C. § 1132 in its establishment of the
right of a participant or beneficiary to recover benefits due
under the terms of her plan, to enforce her right under the
terms of the plan or to clarify her right to future benefits
under the terms of the plan.

Paragraph 3 of the plaintiff's complaint (Doc. 1) refers
to the Employee Welfare Benefit Plan of defendant Penn National

of which Plan, as the complaint may be construed, the Prudential Plan is a part.  Assuming, *arguendo* that the disability benefits plan is a part of a more comprehensive ERISA plan that includes life, health and dental insurance components, a form of relief that would restore to the plaintiff wrongfully denied benefits would be a form of recovery authorized under § 1132(a)(1)(B).  This issue has not been developed by the parties enough to justify a judgment for or against the plaintiff as to this form of relief.  The plaintiff's motion for summary judgment as to these benefits should be denied.  It will be recommended that the plaintiff's motion for summary judgment be granted as to the claim involving the payment of disability benefits and denied as to her claim for the restoration of life insurance and health and dental insurance, and that the court's order be stated so as to reflect that the order is without prejudice to the right of Prudential to consider whether to terminate disability benefits after the expiration of 24 months of benefits.

Therefore, it is recommended that the defendants' motions for summary judgment be denied and that the plaintiff's motion for summary judgment be granted in part and denied in part.  It is recommended that the defendants be ordered to restore the

plaintiff's disability benefits and to pay disability benefit payments under the policy to the plaintiff effective from the date of cancellation of her benefit payments in September 2003. It is recommended that summary judgment be denied as to the plaintiff's claim for reimbursement for health, dental and life insurance premiums paid by the plaintiff as a result of the cancellation of her disability benefits, and that these issues be addressed at trial.  It is recommended that the order of the court contain the provision that it is without prejudice to the right of the defendants to terminate benefits in the future consistent with the policy provisions.


                                        */s/ J. Andrew Smyser*
                                        J. Andrew Smyser
                                        Magistrate Judge


Dated:  May 12, 2006.